# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **KRISTY KAY MONEY and ROLF JACOB SRAUBHAAR,** § § §<br>*Plaintiffs* § §<br>v. § §<br>**CITY OF SAN MARCOS and AMANDA HERNANDEZ, in her official capacity as Director of Planning and Development Services,** § § § § §<br>*Defendants* § | **CIVIL NO. 1:23-CV-00718-RP** |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**    **THE HONORABLE ROBERT PITMAN**
        **UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiffs' Motion for Summary Judgment, filed June 28, 2023 (Dkt. 4); Defendants' Motion to Dismiss Plaintiffs' Original Complaint, filed August 14, 2023 (Dkt. 12); the associated Response and Reply briefs; and Plaintiffs' Sur-Reply in Opposition to Defendant[s'] Motion to Dismiss, filed September 8, 2023 with leave of Court (Dkt. 18). By Text Orders entered October 10, 2023, the District Court referred the motions to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

### I.    Facts

Plaintiffs Kristy Kay Money and Rolf Jacob Srabhaar are a married couple who live with their children in a house they bought in the Burleson Historic District in San Marcos, Texas in 2017. Plaintiffs' Complaint, Dkt. 1 ¶¶ 9, 16, 18.

1

The Burleson Historic District was designated in 2005. Dkt. 12-1 at 7. Under the San Marcos Development Code ("Code"), property owners must seek a certificate of appropriateness from the San Marcos Historic Preservation Commission before making certain alterations to their property, including alterations to the front façade. Section 2.5.5.1(A) of the Code states:

> **Purpose.** The purpose of a certificate of appropriateness is to assure that construction, alteration, restoration, relocation, or demolition of a structure, or alterations to the site or appurtenances in a Historic District or a Historic Landmark is congruous with the historical, architectural or cultural aspects of the district or landmark. Furthermore, the purpose of a certificate of appropriateness is to make certain that historic structures, streets and neighborhoods are preserved and protected.

Dkt. 12-1 at 2. A final decision of the Commission on an application for a certificate of appropriateness may be appealed to the San Marcos Zoning Board of Adjustments within ten days of the Commission's action. Code § 2.5.5.5, Dkt. 12-1 at 4.

Six years after Plaintiffs bought their house, in March 2023, they decided to remove from the second-story front façade a wrought-iron Juliette balcony with the letter "Z":



*Id.* ¶¶ 34-35. Plaintiffs allege that the "Z" was installed by previous owner Frank Zimmerman, "a prior owner of a local theatre known for, among other things, hosting Ku Klux Klan Day in the 1920s." *Id.* ¶¶ 36-37. Plaintiffs allege that: "Because this association clashes with Plaintiffs' values and their aesthetic preferences, they would like to remove it." *Id.* ¶ 2. Plaintiffs filed an application with the Historic Preservation Commission to remove the balcony and the Commission held a hearing, during which they denied the application by unanimous vote. *Id.* ¶¶ 38-40.

Plaintiffs never raised Zimmerman's alleged association with the Klan to the Commission or the City of San Marcos before they sued. Quite to the contrary, in Plaintiffs' application and when Money spoke at the Commission hearing, she said only that she does not like the balcony's aesthetic and that the decoration does not conform with her family's "values," never mentioning the Klan at all. Dkt. 15-1 at 27.

The day after the Commission's vote, the City of San Marcos sent Plaintiffs a letter, explaining that their request was denied because it was not consistent with Secretary of the Interior's Standards for Rehabilitation 2, 3, 4, and 5. Dkts. 4-3, 12-3. The letter also informed Plaintiffs how to appeal the Commission's decision and the deadline for doing so (ten days). *Id.* Plaintiffs did not appeal the denial of their application.

In their Complaint, Plaintiffs assert claims for a *per se* taking, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, and for an unconstitutional exercise of the police power under Article I, Section 19 of the Texas Constitution. They seek a declaratory judgment, a permanent injunction prohibiting San Marcos from enforcing the relevant section of the Code against them, an "award of nominal damages for the invasion of Plaintiffs' property in violation of the Fifth and Fourteenth Amendments," and attorneys' fees and costs. Dkt. 1 at 10.

Plaintiffs moved for summary judgment on all claims five days after filing their Complaint. Defendants move to dismiss all claims. Both motions are fully briefed.

## II.   Motion to Dismiss

The Court first addresses Defendants' motion to dismiss. Defendants argue that the Court should dismiss Plaintiffs' federal constitutional claim because it is not ripe, and dismiss Plaintiffs' claim under the Texas Constitution because they did not exhaust administrative remedies. Defendants also contend that Plaintiffs' claims for declaratory and injunctive relief should be dismissed due to a lack of standing and ripeness.

3

It is unclear whether Defendants move for dismissal under Rule 12(b)(1) alone or Rule 12(b)(6) as well. While Defendants direct most of their arguments to threshold Rule 12(b)(1) considerations, they also invoke Rule (12)(b)(6). *See* Dkt. 12 at 2; *see also id.* at 1 (stating that Defendants move to dismiss "pursuant to Federal Rule of Civil Procedure 12(b)."). Either way, the Court has authority to dismiss *sua sponte* for failure to state a claim under Rule 12(b)(6) "as long as the procedure employed is fair." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); *see also Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018) ("A district court may consider the sufficiency of a complaint on its own initiative, 'as long as the procedure employed is fair.'") (citation omitted); ARTHUR R. MILLER, 5B FEDERAL PRACTICE & PROCEDURE (WRIGHT & MILLER) § 1357 (3d ed. Apr. 2023 Update) ("[I]f a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

Plaintiffs had notice of, and a full opportunity to respond to, all issues raised by Defendants and addressed in this Report and Recommendation. In particular, the District Court granted Plaintiffs leave to file a sur-reply in which they argued the aesthetics issue addressed below. Dkt. 18. The Court finds that it is fair to determine whether Plaintiffs state plausible claims.

**A. Evidence Considered**

The Court has considered the facts set forth in the Complaint; matters of which judicial notice may be taken under Federal Rule of Evidence 201; and the exhibits to Defendants' motion to dismiss, which are referenced in the Complaint and central to Plaintiffs' claims. Defendants submit three exhibits: the San Marcos Development Code, the video recording of the Commission hearing, and the letter informing Money that the request to allow removal of the balcony was denied. Dkts. 12-1 through 12-3. The Court considers these exhibits, to which Plaintiffs do not object,

because all are undisputed facts discussed in Plaintiffs' Complaint "sufficiently to incorporate them." *Hodge v. Engleman*, No. 22-11210, --- F.4th ----, 2024 WL 161524, at *3 (5th Cir. Jan. 16, 2024). The Court also considers the application, which Plaintiffs filed in support of their motion for summary judgment and is undisputed and discussed in the Complaint. Dkt. 15-1 at 27.

**B. Claims under the United States Constitution**

The Court begins by addressing Plaintiffs' federal claims.

**1. Subject-Matter Jurisdiction**

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021).

**a. Rule 12(b)(1) Legal Standard**

A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of the court. "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (citation omitted). The party seeking to invoke subject-matter jurisdiction has the burden to establish it. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021).

In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and all

5

reasonable inferences must be made in the plaintiff's favor. *Haverkamp v. Linthicum*, 6 F.4th 662, 668-69 (5th Cir. 2021). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). At the pleading stage, the plaintiff's burden is to allege "a plausible set of facts establishing jurisdiction." *Di Angelo Publ'ns*, 9 F.4th at 260.

### b. Plaintiffs' Claims Are Not Ripe

Federal subject matter jurisdiction is limited to ongoing "cases" or "controversies." U.S. CONST. art. III, § 2. The ripeness doctrine of justiciability originates in the case-or-controversy requirement of Article III. *Trump v. New York*, 141 S. Ct. 530, 535 (2020). To be "ripe," a case must not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Ripeness ensures that federal courts do not decide disputes that are "premature or speculative." *DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021).

Courts examine two factors to determine whether a claim is ripe: (1) fitness for decision, and (2) hardship to the parties in withholding court consideration. *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023). "First, a claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development. So, if a claim is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe." *Id.* (cleaned up).

The Supreme Court has issued several recent opinions relevant to the Court's analysis. They make clear that there is no administrative exhaustion requirement for federal takings claims, and that a plaintiff need not seek compensation in state court before bringing a takings action. *See Pakdel v. City & Cnty. of San Francisco, Cal.*, 141 S. Ct. 2226, 2229 (2021) (per curiam). But the

6

Court also instructs: "When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Id.* at 2228 (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 737 (1997)). "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2169 (2019) (stating that the finality requirement of *Williamson* was not at issue).

Defendants argue that "there was no 'final decision' from the City of San Marcos on Plaintiffs' request unless and until the matter was reviewed by the Zoning Board," and: "There has been no 'final decision' issued by the City of San Marcos on the issue of removal of the balcony because Plaintiffs failed to request one." Dkt. 16 at 7. Defendants assert that the Zoning Board "had the authority to reverse the decision or remand it for reconsideration" under the Code. "While Plaintiffs have no obligation to exhaust administrative remedies in order to proceed with the federal constitutional claims, they do have an obligation to show that they secured a 'final decision' from the City of San Marcos." Dkt. 12 at 8. Defendants cite *DM Arbor Court*, 988 F.3d 215, in which the Fifth Circuit found that a takings claim was not ripe when the Houston Public Works Director denied a permit request because the plaintiff had not requested a variance or appealed the permit denial to the General Appeals Board or the City Council. Citing *Williamson County*, the Fifth Circuit held: "A regulatory takings claim is not ripe until the government has reached a final decision on the challenged regulation." *Id.* at 218.

In response, Plaintiffs distinguish regulatory takings precedent, contending that they instead bring a *per se* takings claim for a physical occupation of property under *Loretto v. Teleprompter*

7

*Manhattan CATV Corp.*, 458 U.S. 419 (1982). For the reasons discussed below, the Court disagrees that Plaintiffs have stated a *per se* takings claim and finds the regulatory cases Defendants cite to be relevant.

The Zoning Board never had the opportunity to review Plaintiffs' request to remove the balcony, so it is unknown what decision it would have reached – particularly had Plaintiffs ever raised their asserted concern about Zimmerman's Klan association. Therefore, Plaintiffs' claims raise the prudential concerns addressed by the Fifth Circuit in *DM Arbor Court*, 988 F.3d at 218: "A case becomes ripe when it 'would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now.'" (citation omitted). Further factual development is particularly important here because Plaintiffs emphasize in this litigation, but did not previously inform the Commission or San Marcos Zoning Board, that they want to remove the balcony from their house because Zimmerman hosted Ku Klux Klan Day at his theater in the 1920s.

The Court finds that Plaintiffs' claims require further factual development from the relevant governmental unit, and that withholding consideration while Plaintiffs obtain a final decision would present no hardship to Plaintiffs, who owned the house for six years before seeking to remove the balcony.[1] *Braidwood*, 70 F.4th at 930. Because Plaintiffs have not carried their burden to show that their takings claim is ripe, the Court recommends that Defendants' motion to dismiss that claim under Rule 12(b)(1) should be granted.

---

[1] Although the deadline for Plaintiffs to appeal the original decision has expired, they do not contend that they are barred from reapplying for a certificate of appropriateness.

## 2. Failure to State a Claim

In the alternative, if the Commission's decision is considered a final action and Plaintiffs' takings claim is ripe, this Magistrate Judge recommends that the claim be dismissed for failure to state a claim under Rule 12(b)(6).

### a. Rule 12(b)(6) Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). But, as stated above, when a defendant attaches to

9

its motion to dismiss exhibits – including video evidence – that are referenced in the complaint and central to the plaintiff's claims, the court can properly consider those documents. "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* (citation omitted); *see also Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 452 (S.D. Tex. 2021) ("When defendants attach to a Rule 12(b)(6) motion to dismiss video evidence that is referred to in the complaint and central to it, a court may consider that evidence.").

### b. Plaintiffs Fail to State a *Per Se* Takings Claim

The Fifth Amendment to the Constitution proscribes the taking of private property "for public use, without just compensation." U.S. CONST. amend. V. The Supreme Court recognizes two main types of takings: *per se* or physical takings, and regulatory takings. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002). The essential question is "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021).

As stated, Plaintiffs assert that they bring a *per se* takings claim for physical occupation of property under *Loretto*, 458 U.S. 419. In *Loretto*, the Supreme Court held that a New York law requiring a landlord to permit installation of television cables on her properties was a permanent physical occupation of real property authorized by the government and thus a compensable taking. Plaintiffs argue that: "Under *Loretto*, the only question is whether the City has required the occupation of the property by an unwanted object." Dkt. 14 at 11. They characterize this case as "a constitutional challenge to a local ordinance that requires private property owners to keep unwanted objects attached to their homes," contending that the Code "mandates the physical occupation of private property by unwanted objects" without compensation. *Id.* at 1, 7.

10

Plaintiffs offer no support for their claim that not being permitted to remove an integrated part of a home's façade is a *per se* physical taking, and the Court finds *Loretto* readily distinguishable. In this case, the Juliette balcony is intrinsic – and apparently original, Dkt. 12-2 at 6:03-20 – to Plaintiffs' home, which sits inside a historic district designated in 2005. The balcony was on the home when Plaintiffs bought it. Plaintiffs allege no facts stating a plausible a claim that the government has "invaded" or physically occupied Plaintiffs' home or caused them to suffer the "special kind of injury when a *stranger* directly invades and occupies the owner's property." *Loretto*, 458 U.S. at 436; *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (stating that the government must provide just compensation when it "requires an owner to suffer a permanent physical invasion of her property"); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) (describing "regulations that compel the property owner to suffer a physical 'invasion' of his property").

Taking the Complaint as true, Plaintiffs purchased their home within a historic district in 2017, with the balcony attached and a façade they could not alter without Commission approval. The government has done nothing to permanently affix an object to their property or permit any stranger to do so, and Plaintiffs have no "historically rooted expectation of compensation" for complying with zoning regulations. *Loretto*, 458 U.S. at 441.

Nor do Plaintiffs find support for their claim in precedent on zoning regulations for historic buildings. Defendants argue that Texas recognizes the right and authority of local governments to regulate zoning for historical significance (citing TEX. LOC. GOV'T CODE § 211.003(b): "In the case of designated places and areas of historical, cultural, or architectural importance and significance, the governing body of a municipality may regulate the construction, reconstruction, alteration, or razing of buildings and other structures."). "A municipality has the constitutional

11

power to regulate the use of private property in the interest of historic preservation." *Mayes v. City of Dallas*, 747 F.2d 323, 324 (5th Cir. 1984).

In *Maher v. City of New Orleans*, 516 F.2d 1051 (5th Cir. 1975), the Fifth Circuit applied the regulatory takings test of *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 107 (1978), to government regulation of historic preservation and found no unconstitutional taking when a landowner was denied permission to demolish a cottage in the French Quarter. Plaintiffs argue that *Maher* is no longer valid after *Loretto*, but in *Cedar Point*, the Supreme Court reiterated that courts assess use restrictions, such as zoning ordinances, under the *Penn Central* test. The Court distinguished "longstanding background restrictions on property rights" from the law at issue in *Cedar Point*, which permitted union organizers to enter onto private farms: "As we explained in *Lucas* v. *South Carolina Coastal Council*, the government does not take a property interest when it merely asserts a 'pre-existing limitation upon the land owner's title.'" *Id.* at 2079 (quoting *Lucas*, 505 U.S. at 1028-29). The Court finds that the Code is a pre-existing limitation on Plaintiffs' title to their home in the Burleson Historic District.

Plaintiffs do not state facts supporting their claim that the City of San Marcos has mandated "physical occupation of [their] property by unwanted objects for a public benefit without compensation," Dkt. 1 ¶ 45, or "government-mandated occupation of the Plaintiffs' property by unwanted objects," *id.* ¶ 48, and thus have not stated a *per se* takings claim. The Court recommends that this claim be dismissed.

## C. Claims under the Texas Constitution

Plaintiffs assert their second claim under Article 1, Section 19 of the Texas Constitution, which provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Plaintiffs challenge the Code both on its face and as applied, arguing that the ordinance restricts

12

their "traditional right to use their home based on the aesthetic preferences of the Commission." Dkt. 1 ¶¶ 52, 56. Defendants argue that they are entitled to dismissal of Plaintiffs' claim under the Texas Constitution because Plaintiffs concede that they did not exhaust administrative remedies. Regardless whether Plaintiffs failed to exhaust administrative remedies under Texas law, the Court finds that they fail to state a claim under the Texas Constitution under Rule 12(b)(6).

Plaintiffs argue that the ordinance "violates the Texas Constitution because it restricts property for purely aesthetic purposes, which is flatly forbidden under Texas law," citing the nearly ninety-year-old case *Lombardo v. Dallas*, 73 S.W.2d 475, 479 (1934). Dkt. 14 at 7. In *Lombardo*, the Supreme Court of Texas upheld a Dallas zoning ordinance that excluded gasoline filling stations from residential districts. The court used the word "aesthetic" just once, in a sentence near the end of a lengthy quote from 30 Texas Jurisprudence, p. 120, § 58: "Regulations interfering with private property rights are invalid if founded upon purely aesthetic consideration." *Id.* The court cited the legal encyclopedia in support of the proposition that "[t]he interests of the public generally, as distinguished from those of a particular class, must require the interference." *Id.* at 478.

The current edition of Texas Jurisprudence makes clear that the passage quoted in *Lombardo* is generations out of date under Supreme Court precedent:

> Although there is early Texas authority that the restriction of the use of private property for aesthetic purposes alone is invalid and is considered an unconstitutional taking of private property without compensation, rather than a valid exercise of the police power, the United States Supreme Court has indicated that aesthetic purposes may be sufficient in themselves to justify police regulation. In any event, in enacting zoning ordinances, aesthetic considerations do not have to be ignored; because harmonious appearance, appropriateness, good taste, and beauty displayed in a neighborhood not only tend to conserve the value of property, but also foster contentment and happiness among homeowners, aesthetic considerations may be a matter of general welfare.

13

TAMMY E. HINSHAW ET AL., 77 TEX. JUR. 3D ZONING § 52 (3d ed. Jan. 2024 Update) (citing, *inter alia*, *Berman v. Parker*, 348 U.S. 26 (1954)); *see also* YVONNE LEWIS MCDONALD, 10 TEX. JUR. 3D BUILDING REGULATIONS § 17 (3d ed. Jan. 2024 Update) ("Aesthetic considerations have been recognized as an aspect of the general welfare. . . . In the case of designated places and areas of historic and cultural importance, the municipality is authorized to regulate the construction, alteration, reconstruction, or raising of buildings and other structures.") (footnotes omitted).

So Plaintiffs rest both their facial and as-applied claim under the Texas Constitution on an invalid legal premise. Even if they did not, based on undisputed evidence the Court properly considers at the motion to dismiss stage, Plaintiffs do not state a plausible claim that the Code restricts their rights based on aesthetic preferences. Dkt. 1 ¶ 52.

Section 2.5.5.4 of the Code directs the Commission to use four criteria to determine whether to approve or deny an application for a certificate of appropriateness: (A) consideration of the effect of the activity on historical, architectural or cultural character of the Historic District or Historic Landmark; (B) for Historic Districts, compliance with the Historic District regulations; (C) whether the property owner would suffer extreme hardship, not including loss of profit, unless the certificate of appropriateness is issued; and (D) the construction and repair standards and guidelines cited in Code § 4.5.2.1. Doc. 12-1 at 4.

Plaintiffs allege: "At the hearing denying the application, the Commission was clear that the application was denied due to the effect of removal on the aesthetic of the property." Complaint, Dkt. 1 ¶ 40. But the Commission rested its decision on historical considerations, not aesthetics. During the hearing, a staff member gave a presentation in which she said: "This balcony could be historic material. You can see in this photograph that there is a Z that can be seen on the balcony, which one could assume that refers to the Zimmerman family who originally built the home in the

1930s." Video recording of Historic Preservation Commission hearing, Dkt. 12-2 at 2:10-23. The commissioners then discussed the balcony's historic nature:

> **Commissioner 1:** "Just looking at the images and so forth, it strikes me as being original to the house and really seems like a character-defining element of the house. It's like one of the – it seems to really define the historic quality of the façade, to me." *Id.* at 6:03-20.
>
> **Commissioner 2:** "I agree. I think it is very important historically because it's got the Z on it and it was the Zimmerman house. And the reason that we have houses in the historic district is we're trying to make a connection in some ways to the past. And just to go in and destroy the one thing that really points it out as being the Zimmerman house seems like it would be a shame to take that off and I don't know why you'd want to take that off, because it certainly helps define the house. It helps define the history." *Id.* at 6:25-7.

A third commissioner then asked Ms. Money directly why she wanted to remove the balcony:

> **Money:** "Um, well, you know, every person is different. We just – we don't like it. We don't want it on. I think our application, um, speaks for itself." *Id.* at 7:23-36.
>
> **Commissioner 2:** "But if everybody did that in historic districts – if everybody did what they wanted and what they liked, then the historic district would have no integrity. It wouldn't even be historic anymore." *Id.* at 7:40-50.
>
> **Money:** "I understand where you're coming from. Yeah. It's integrity, that ideal that propels us to want things to be similar to our family's values. So I can see that we share the same value of integrity, it's just a matter of application." *Id.* at 7:52-8:12.
>
> **Commissioner 1:** "I mean, that's the whole point of a historic district, is to retain character-defining features, and that is a character-defining feature. Certainly it appears to date from the '30s just from what I can tell as an architectural historian. And it doesn't seem to cause any problems. It's relatively minor in the sense of, you know, functionally, it's not hurting anything. I can't see how it could hurt anything. So I don't really see a justification for removing it, given the fact that the house is in a historic district and that's a character-defining feature of the house." *Id.* at 8:15-55.
>
> **Commissioner 2:** "You know, so many of us who restore these houses struggle to keep the original character-defining aspects of the house and the materials that are originally used and all, and that's the whole point of being in a historic district, you know, to kind of like respect the past." *Id.* at 8:58-9:19.

15

Consistent with the Commission's discussion at the hearing of the historical character of the balcony, the denial letter stated that Plaintiffs' request to remove the balcony was inconsistent with the Secretary of the Interior's Standards for Rehabilitation 2, 3, 4, and 5, which state:

> 2. The historic character of a property shall be retained and preserved. The removal of historic materials or alteration of features and spaces that characterize a property shall be avoided.
>
> 3. Each property shall be recognized as a physical record of its time, place, and use. Changes that create a false sense of historical development, such as adding conjectural features or architectural elements from other buildings, shall not be undertaken.
>
> 4. Most properties change over time; those changes that have acquired historic significance in their own right shall be retained and preserved.
>
> 5. Distinctive features, finishes, and construction techniques or examples of craftsmanship that characterize a historic property shall be preserved.

36 C.F.R. § 67.7(b) (2011). Plaintiffs discuss these standards in their Complaint, incorrectly alleging that they "uniformly turn on visual appearance and aesthetic considerations." Dkt. 1 ¶ 27.

In sum, even if it were "flatly forbidden under Texas law" to restrict property use "for purely aesthetic purposes," Dkt. 14 at 7, the Code on its face and the evidence referenced in and central to the Complaint contradict Plaintiffs' allegations that the Code "restricts Plaintiffs' traditional right to use their home based on the aesthetic preferences of the Commission" and that permission to alter their home "can be denied solely based on the aesthetic judgments of the Commission." Dkt. 1 ¶¶ 52, 54. Therefore, Plaintiffs fail to state a plausible claim under the Texas Constitution under Rule 12(b)(6).

Because the Court recommends dismissing both of Plaintiffs' claims, it need not address their requests for declaratory and injunctive relief or their motion for summary judgment.

### III.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court (1) **GRANT** Defendants' Motion to Dismiss Plaintiffs' Original Complaint (Dkt. 12) and **DISMISS all claims without prejudice**, and (2) **DISMISS AS MOOT** Plaintiffs' Motion for Summary Judgment (Dkt. 4).

It is **ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

### IV.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 26, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE