**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| KRISTY KAY MONEY and ROLF JACOB STRAUBHAAR<br>    *Plaintiffs*,<br><br>    v.<br><br>CITY OF SAN MARCOS, AND DIRECTOR OF PLANNING AND DEVELOPMENT SERVICES AMANDA HERNANDEZ in her official capacity,<br>    *Defendants*. | § § § § § § § § § § § § | Civil Action No. 1:23-cv-00718-RP |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................... 1

UNDISPUTED FACTS ............................................................................................ 1

    *Background* ................................................................................................ 1

    *The Moneys' Application is Denied* ......................................................... 3

    *The Present Lawsuit* ................................................................................ 4

    *The City's Original Motion to Dismiss* .................................................... 4

    *This Court's Original Decision Dismissing the Case* .............................. 4

    *The Fifth Circuit Reverses this Court's Dismissal* ................................. 5

    *Proceedings on Remand* ........................................................................... 6

ARGUMENT .......................................................................................................... 7

I.    THE CITY IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE MONEYS'
    TAKINGS CLAIMS ......................................................................................... 7

    A.    The City's arguments against the application of *Loretto* are
        barred by the law of the case doctrine and the mandate rule ............... 8

    B.    The City's attempts to distinguish *Loretto* are barred by
        Supreme Court Precedent ..................................................................... 10

II.    THE CITY IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE MONEYS'
    TEXAS DUE COURSE OF LAW CLAIMS ............................................................ 13

    A.    The challenged portions of the ordinance are not rationally
        related to a legitimate government interest ........................................ 14

    B.    The challenged portions of the Ordinance are unduly
        burdensome as applied to the Moneys ................................................ 17

CONCLUSION .................................................................................................... 19

CERTIFICATE OF SERVICE .................................................................................. 20

## INDEX OF AUTHORITIES

*Cases:*                                                                    *Page(s):*

*Bostock v. Sams,*
    52 A. 665 (1902)....................................................................................... 14

*FCC v. Fla. Power Corp.,*
    480 U.S. 245 (1987) ................................................................................ 11

*Horne v. Dep't of Agric.,*
    576 U.S. 351 (2015) ................................................................................ 10

*Houston & T. C. R. Co. v. Dallas,*
    98 Tex. 396 (Tex. 1905) .......................................................................... 18

*Humble Oil & Ref. Co. v. Georgetown,*
    428 S.W.2d 405 (Tex. Civ. App. 1968) .......................................... 16, 17

*In re Felt,*
    255 F.3d 220 (5th Cir. 2001) .................................................................... 9

*Kapche v. City of San Antonio,*
    304 F.3d 493 (5th Cir. 2002) .................................................................... 8

*Keystone Bituminous Coal Ass'n v. DeBenedictis,*
    480 U.S. 470 (1987) .......................................................................... 11, 12

*Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.,*
    850 Fed. Appx. 213 (5th Cir. 2021)......................................................... 8

*Lombardo v. Dallas,*
    73 S.W.2d 475 (Tex. 1934) ........................................................ 4, 6, 13, 14

*Loretto v. Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419 (1982).......................................5, 7, 9, 11, 12, *passim*

*McClain v. Lufkin Indus.,*
    649 F.3d 374 (5th Cir. 2011) .................................................................... 8

*Milton v. United States,*
    36 F.4th 1154 (Fed. Cir. 2022).............................................................. 13

*Money v. City of San Marcos,*
    2025 U.S. App. LEXIS 2897 (5th Cir. Feb. 7, 2025) .........5, 7, 9, 11, 12, *passim*

*Nollan v. Cal. Coastal Com,*
    483 U.S. 825, (1987) ............................................................................. 10

*Palazzolo v. Rhode Island,*
    533 U.S. 606 (2001) ............................................................................... 10

*Patel v. Tex. Dep't of Licensing & Regulation,*
    469 S.W.3d 69 (Tex. 2015) ............................................................. 13, 17

*Penn Central Transportation, Co. v. New York City ,*
    438 U.S. 104 (1978) ..................................................................... 5, 12, 13

*Powell v. City of Houston,*
    628 S.W.3d 838 (Tex. 2021) ................................................................ 17

*Spann v. Dallas,*
    235 S.W. 513 (Tex. 1921) ..............................................4, 6, 11, 14, 15, *passim*

*St. Joseph Abbey v. Castille,*
    712 F.3d 215 (5th Cir. 2013) ........................................................ 16, 17

*Tyler v. Hennepin Cnty.,*
    143 S. Ct. 1369 (2023) ........................................................................ 10

*United States v. Segura,*
    747 F.3d 323 (5th Cir. 2014) ............................................................... 9

*Williamson County Regional Planning Comm'n v. Hamilton Bank,*
    473 U.S. 172 (1985) ......................................................................... 4, 5

*W. U. Place v. Ellis,*
    134 S.W.2d 1038 (Tex. 1940) ...................................................... 14, 17

***Regulations & Ordinances:***

36 C.F.R. §67.7(b) ................................................................................ 2, 3, 15

San Marcos Development Code
    § 2.3.7.4 ........................................................................................... 4
    § 2.5.5.1(B) .................................................................................. 2, 3
    § 2.5.5.5 ........................................................................................... 3
    § 4.5.2.1 (I)(1)(a)-(j) ................................................................. 2, 15

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

Plaintiffs (the Moneys) file this response in opposition to Defendant's (the City's) motion for summary judgment.

## INTRODUCTION

Two years ago, the City entered a final order requiring the Moneys to keep another man's initial bolted to the front of their home. Last February, the Fifth Circuit held that these facts, if true, constituted a *per se* taking under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

On remand, the City does not dispute any of the facts from the Moneys' complaint. As a result, the Moneys rightly moved for summary judgment. The City opposes that motion, and has now also moved for summary judgment itself.

But as explained below, the City has never disputed *any* of the facts that the Fifth Circuit held would be sufficient to render the City's actions unconstitutional. Nor does the City present any additional evidence that would call those conclusions into question.

Instead, the City spends most of its brief discussing portions of the ordinance that the Moneys never challenged and attempting to relitigate the same legal arguments the Fifth Circuit already rejected. These arguments fail.

The City's motion for summary judgment should be denied, and the Moneys' summary judgment motion should be granted.

## UNDISPUTED FACTS

It would be easy to miss, but despite a dozen briefs in this case, the following facts are not in dispute.

### *Background*

The Moneys' home is located in the Burleson Historic district. ECF 4-1, p. 1. But, like other homes in the historic district, it is not a historically designated home. *Id.*

1

On the front of the home is a small metal decoration bearing the letter "Z." ECF 4-1, p. 2; ECF 15-1, p. 16. The "Z" is believed to be the initial of Frank Zimmerman—a previous owner known for, among other things, hosting Ku Klux Klan Day at his local theatre. ECF 4-1, p. 2; see also, ECF 4-2 (news articles).

The Moneys would like to remove the decoration, because maintaining the association with Mr. Zimmerman is contrary to their values. ECF 4-1, p. 2; ECF 15-1, p.5. However, under the challenged ordinance, the Moneys may not make any change to the appearance of their home without approval from the City in the form of a "certificate of appropriateness" from the "Commission." Dev. Code § 2.5.5.1(B).

This "certificate of appropriateness" requirement applies to all properties in the district, whether they are historic or not. *Id.* Indeed, the restriction applies to vacant lots and homes built as recently as 2017. *Id.*; see also ECF 37-3, (Historic Resources Survey Report).

In determining whether to grant a certificate of appropriateness, the Commission shall consider ten criteria. Dev. Code § 4.5.2.1 (I)(1)(a)-(j). It is undisputed that *none* of these mandatory criteria turn on the historic value of the property or the historic impact of the requested change. *Id.* Indeed, "history" is never mentioned. *Id.* Rather all ten criteria turn on "visual compatib[ility] with other buildings to which they are visually related." *Id.*

In addition to these mandatory criteria, the Commission *may* also consider several non-mandatory criteria from the United States Secretary of the Interior's guidelines located at 36 C.F.R. §67.7(b). Unlike the mandatory criteria contained in the ordinance, these additional considerations focus on maintaining an historic aesthetic. For example, the Secretary's standards allow the City to consider "features and spaces that characterize a property" with an eye towards "[d]istinctive features [and] finishes" and avoiding "a false sense of historical development, such as adding conjectural features or architectural elements from other buildings." 36 C.F.R.

§67.7(b). However, the City has repeatedly admitted that these additional criteria are ultimately "aesthetic considerations." ECF 40, p. 4. They are designed to maintain a certain "look." They do not turn on the historic nature of the property and apply with equal force to non-historic homes and vacant lots. Dev. Code § 2.5.5.1(B).

As one might expect with these sorts of criteria, it is undisputed that the Commission's discussions regarding whether to grant a certificate of appropriateness often devolve into subjective disputes about whether alternatives would be "prettier," (ECF 37-8, 30:55), have "more pizzaz," (ECF 37-10, 39:00), or just look better. ECF 37-9, 18:05. In one circumstance, an application for an addition to a home was denied because the proposed changes would look too similar to structures nearby. ECF 37-7, 1:01:07. A follow-up application for the same home was denied because the amended changes would look too different from those structures. ECF 37-6, 43:26.

### *The Moneys' Application is Denied*

In January of 2023, the Moneys' applied for a certificate of appropriateness to remove the decoration containing the "Z" from their home. ECF 15-1. The Moneys' application made clear that keeping the decoration on the home would be contrary to their values. *Id.*

City staff conducted an extensive review of the application and surrounding evidence and concluded that: (1) the decoration was not a "distinctive feature of the home in the historic resources survey" (ECF 15-1, p. 8); (2) the City could not confirm whether the decoration was original to the house (*id.*); and most importantly, (3) removal of the decoration would "***not affect***" the "historical, architectural, or cultural character of the Historic District." *Id.* at p. 5 (emphasis added). These official findings are not in dispute. These findings are also the only facts before the Commission when it made its decision.

Despite these findings, the Commission denied the Moneys' application. That decision is now final and unappealable. Dev. Code § 2.5.5.5. The Moneys therefore

may not remove the decoration from their home without risking significant penalties. Dev. Code § 2.3.7.4.

### *The Present Lawsuit*

To avoid this encumbrance on their property, the Moneys filed suit, alleging that, both on its face and as applied, the Ordinance: (1) violates the takings clause of the United States Constitution under *Loretto*, 458 U.S. 419, because it requires the mandatory physical occupation of their property by an unwanted object for a public benefit; and (2) violates Article 1, Section 19 of the Texas Constitution, under cases like *Lombardo v. Dallas,* 73 S.W.2d 475 (Tex. 1934)  and *Spann v. Dallas*, 235 S.W. 513 (Tex. 1921), because it arbitrarily restricts their property based on aesthetic factors. ECF 1.

Because these claims present pure questions of law, the Moneys filed for summary judgment shortly after filing their complaint. ECF 4.

### *The City's Original Motion to Dismiss*

After reviewing the complaint and summary judgment motion, the City filed a motion to dismiss. ECF 12. The City's motion argued that the Moneys' claims were not ripe under *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172 (1985), because the Moneys had failed to exhaust administrative remedies by failing to file a (by then time-barred) appeal with the Board. ECF 12, p. 6-8.

The City also filed a response to the Moneys' summary judgment motion. ECF 13. While that response raised jurisdictional and legal arguments, it tellingly did not point to a single disputed fact that the City believed would be relevant to the outcome of this case. *Id*.; see also, ECF 15, p. 10 (pointing out the lack of a factual dispute). Both motions were assigned to the Magistrate Judge.

### *This Court's Original Decision Dismissing the Case*

After full briefing, the Magistrate issued a recommendation that the case be dismissed. ECF 19. According to the Magistrate, the Moneys had not received a "final"

decision under *Williamson County* because they failed to discuss the Klan affiliation of the home at the final hearing, and they also failed to exhaust any administrative appeals with the Board. *Id.* at 6-8. As such, the Magistrate concluded that the Moneys' claims were not ripe. *Id.* at 8.

The Magistrate also held, *sua sponte*, that the Moneys had failed to state a claim under either the United States or Texas constitutions. *Id.* at 9. As for the federal claims, the Magistrate held that the Moneys failed to plead a *per se* takings claim under *Loretto*, 458 U.S. 419 because: (1) the decoration was already on the property and the ordinance was already in effect at the time of purchase, (2) the decoration was not installed by the government, and (3) Fifth Circuit precedent allegedly held that such claims should be pursued under *Penn Central Transportation, Co. v. New York City ,* 438 U.S. 104 (1978) rather than *Loretto*. ECF 19, p. 10-12.

As for the Texas claims, the Magistrate held that Texas cases banning aesthetic zoning, like *Spann* and *Lombardo*, were "generations out of date" and, in any event, the challenged Ordinance is based on history, not aesthetics. ECF 19, p. 12-16. The Magistrate therefore recommended that the case be dismissed, and that the Moneys' summary judgment motion be dismissed as moot. *Id.* at 17.

After the Moneys filed timely objections to the Magistrate's recommendation, this Court adopted the Magistrate's opinion in full without comment. ECF 23. Having dismissed the case, it also dismissed the Moneys' summary judgment motion as moot. *Id.* The Moneys appealed.

### *The Fifth Circuit Reverses this Court's Dismissal*

After full briefing and oral argument, the Fifth Circuit reversed this Court's dismissal. *Money v. City of San Marcos*, 2025 U.S. App. LEXIS 2897, at \*17 (5th Cir. Feb. 7, 2025). <u>First</u>, the court held that the Moneys had received a "final decision" from the Commission and therefore both their state and federal claims were ripe. *Id.* at 7-9. <u>Second</u>, the court held that the facts of this case were basically

5

indistinguishable from *Loretto*, and therefore that the Moneys had pled valid *per se* takings claims. *Id.* at 11-12. *Finally*, the court held that *Spann* and *Lombardo* are still good law in Texas, and therefore, that aesthetic zoning is unconstitutional in Texas. *Id.* at 12-17. The court left it to this Court on remand to determine whether the Ordinance itself, or the City's application of the Ordinance here, is contrary to those cases. *Id.* at 17.

### *Proceedings on Remand*

Once this case was remanded, the Moneys' counsel reached out to the City to see what factual issues might remain. To further that discussion, counsel asked specifically if there was any factual assertion in the Moneys' original (now moot) summary judgment motion that the City believed was in dispute. Two months later, the City had not responded. Because the City did not raise any relevant factual dispute in its initial response to the Moneys' original (now moot) summary judgment motion, and because it still could not do so after almost two years of litigation, the Moneys moved again for summary judgment. That motion is currently fully briefed by both sides and pending before this Court. ECF 37, ECF 38, ECF 39.

The City now files its present motion raising the exact same legal arguments raised in its summary judgment response and in its briefing to the Fifth Circuit. ECF 40. As with its previous pleadings, the City's motion does not dispute any of the above-mentioned facts, provide any contrary evidence, or submit any other relevant[1] fact.

---

[1]    The City's motion and response take umbrage with the Moneys' treatment of Mr. Zimmerman's Klan ties. But, as explained in the Moneys' reply brief, the City does not dispute *any* of the Moneys' assertions regarding Mr. Zimmerman's Klan related activities. ECF 40, p. 6-7. Rather, the City simply notes that Mr. Zimmerman also did other things. *Id.* To the extent this can be characterized as a dispute, it is irrelevant to the legal claims here. Whether Mr. Zimmerman was a complex individual has no bearing on whether the City can force the Moneys to keep his initial bolted to their home. The City's statement of facts also burns a lot of space discussing unchallenged portions of the ordinance and disagreeing with the legal conclusions that can be drawn from various statements of City officials. ECF 40, p. 2-6. But those

ARGUMENT

## I. THE CITY IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE MONEYS' TAKINGS CLAIMS

To begin, the City is not entitled to summary judgment on the Moneys' *per se* takings claims. The *per se* takings test is strict. When the government requires a property owner to keep an unwanted object attached to her property for a public benefit, that mandatory physical occupation is a taking, "*without regard* to whether the action achieves an important public benefit or has only minimal economic impact on the owner." *Loretto v. Teleprompter Manhattan Catv Corp.,* 458 U.S. 419, 434-35 (1982) (emphasis added).

As the Fifth Circuit already recognized, this principle applies with equal force here. *Money*, 2025 LX 273785, at *11-12 (hereafter "*Money I*"). As explained in the Moneys' summary judgment motion, there is no dispute that under the ordinance the Moneys are required to keep a small decorative "Z" attached to their home for a public benefit without compensation. Under *Loretto*, that is a taking. *Id*. Indeed, the Fifth Circuit went so far as to say that it saw "no meaningful distinction" between the facts here and the facts in *Loretto*. *Id*.

Because the City knows that the application of *Loretto* would necessarily resolve this case in the Moneys' favor, it insists that *Loretto* simply does not apply. See ECF 40, p.7-15. But, as explained below, the City raised the same arguments in *Money I*, and they were rejected. Under both the "law of the case" doctrine and the "mandate rule" those issues cannot be relitigated here. Moreover, even if the City is permitted to relitigate these failed arguments—and it should not be—the City's arguments regarding the application of *Loretto* are barred by binding precedent.

---

are legal disputes, not factual ones. Both the text of the ordinance and the City's statements are undisputed and speak for themselves.

7

**A.    The City's arguments against the application of *Loretto* are barred by the law of the case doctrine and the mandate rule**

To begin, the "law of the case" doctrine and the "mandate rule" control here. The law of the case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *McClain v. Lufkin Indus.*, 649 F.3d 374, 385 (5th Cir. 2011). Similarly, the "mandate rule" "forecloses the district court and any subsequent [appellate] panel from reexamining issues of law decided by a prior panel." *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 850 Fed. Appx. 213, 215-16 (5th Cir. 2021). The court "must 'implement both the letter and the spirit of the [appellate court's] mandate,' and may not disregard the 'explicit directives' of that court." *Kapche v. City of San Antonio*, 304 F.3d 493, 496 (5th Cir. 2002). Under either doctrine, the City is not free to relitigate legal issues that were already decided in this case by the Fifth Circuit.

Here, the City claims that the Moneys cannot claim a *Loretto* taking because: (1) the ordinance was already in place when the Moneys purchased their home[2]; (2) the "Z" was installed by a previous owner, not the government or a new third party; and (3) *Penn Central*—not *Loretto*—should apply here. ECF 40, p. 9-15.

But both the City and this Court raised those *exact arguments* against the application of *Loretto* in *Money I*. See ECF 19, p. 11-12 (this Court's opinion dismissing the Moneys' *Loretto* claims because it was undisputed that the "Z" and the ordinance existed at the time of purchase); Appellees 5th Cir. Br., p. 26-27 (same). If any of those arguments were legally sound, then the Fifth Circuit would have been

---

[2]    The City presents this as two separate arguments—*i.e.*, that the ordinance existed at the time of purchase, and that the Moneys were allegedly aware of it. However, because the case law does not distinguish between the existence of the ordinance and the property owner's subjective knowledge of it, we treat these as one argument here.

required, as a matter of law, to affirm dismissal. It did not do so. Instead, the Court concluded in clear, unequivocal terms that *Loretto* applies. *Money*, 2025 LX 273785, at *11-12. The City should not be permitted to relitigate those settled issues of law here. *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001).

The City raises two arguments in response. <u>*First*</u>, the City claims (without explanation) that this Court is not bound by the Fifth Circuit's holding that *Loretto* applies, because that holding was allegedly "*dicta*." ECF 40, p. 7-9. But a statement "is not *dictum* if it is necessary to the result or constitutes an explication of the governing rules of law." *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014). Here, the Fifth Circuit's statement regarding the application of *Loretto* was the sole basis for its reversal of this Court's dismissal of the Moneys' takings claims. *Money*, 2025 U.S. App. LEXIS 2897, at *11-12. A statement that forms the sole basis for a holding cannot, by definition, be *dictum*. *Segura*, 747 F.3d at 328. The Fifth Circuit's guidance on the application of *Loretto* is therefore controlling here.

<u>*Second*</u>, the City claims that the Fifth Circuit's holding that *Loretto* applies is not binding because it was made at the motion to dismiss stage and therefore assumed that the allegations in the complaint were true. ECF 40, p. 7. But the City does not explain how that is relevant here. With regard to *Loretto*, the City's arguments are legal—not factual. Indeed, the City does not dispute *a single fact* that the Fifth Circuit deemed controlling on the *Loretto* issue in *Money I*. Compare ECF 40, with *Money*, 2025 U.S. App. LEXIS 2897, at *11-12. In rendering its decision in *Money I* the Fifth Circuit already acknowledged that: (1) the ordinance existed when the Moneys purchased their home; and (2) the "Z" was attached by a previous owner, not the government. *Id*. The Fifth Circuit nevertheless concluded that *Loretto* applied. *Id*. That *legal* holding is therefore the law of the case and cannot be challenged here.

9

**B.      The City's attempts to distinguish *Loretto* are barred by Supreme Court Precedent**

Even if the City could circumvent the law of the case doctrine and the mandate rule, its attempts to distinguish *Loretto* are all foreclosed by precedent. <u>First</u>, the City claims that the Moneys cannot bring takings claims because the challenged ordinance was already in effect and reasonably known when they purchased their home. But it is black-letter law that a property owner is not foreclosed from prevailing on a takings claim simply because the property was purchased with knowledge of a pre-existing regulation. *Palazzolo v. Rhode Island*, 533 U.S. 606, 626 (2001); *Nollan v. Cal. Coastal Com*, 483 U.S. 825, 833, n. 2 (1987). Indeed, the Supreme Court has recently found takings even when the challenged regulations were in effect decades before the property was purchased. See, e.g., *Tyler v. Hennepin Cnty.*, 143 S. Ct. 1369, 1375-76 (2023) (rejecting government's claim that a law that had been in effect since 1935 formed a background principle of law precluding a takings claim); *Horne v. Dep't of Agric.*, 576 U.S. 351, 355 (2015) (finding a law that had been in effect since 1937 nonetheless created a per se taking).

The Moneys have *repeatedly* called these cases to the City's attention (both here and in the Fifth Circuit), and the City has never given an answer. Indeed, the City's most recent brief does not cite these cases at all. Instead, it string cites a host of out of circuit, unpublished, district and appellate court cases which predate the Supreme Court's guidance in *Palazzolo*. ECF 40, p. 10. For the reasons explained in the Moneys' prior briefing, those non-precedential decisions are inapplicable here.

Moreover, even if notice of the challenged ordinance mattered—and it does not—the City has not established that the Moneys had reasonable notice of the draconian restrictions on their property prior to purchase. While the home is in a historic district, it is not historically designated. At the time of purchase, it had long been vacant, was in need of repair, and was designated a low historic priority by the

10

City. The Moneys could not have reasonably foreseen that they would be forced to keep another man's initial bolted to the front of their home, even if they disagreed with what that initial represented. To the contrary, Texans purchasing property generally presume that they can make aesthetic changes that do not endanger their neighbors. *Spann*, 235 S.W. at 516. The City presents no evidence to the contrary.

*Second*, the City argues that *Loretto* does not apply because "there is no 'stranger' invading Plaintiffs' property and placing something on site. Instead, both the balcony and the "Z" existed on the property when Plaintiffs purchased it." ECF 40, p. 10-11. But, as the Fifth Circuit already pointed out in this case, the cable box in *Loretto* also did not involve a new invasion of the property by a stranger. *Money*, 2025 U.S. App. LEXIS 2897, at *11-12. As in this case, it was installed voluntarily by a previous owner. *Id*. That is not a basis to distinguish *Loretto*. *Id*.

None of the City's cited cases are to the contrary. In *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987), for example, the Court rejected a *Loretto* challenge to a regulation restricting the rental rates that utility companies could charge for allowing customers to connect to their utility poles. The Court held that this pricing regulation was not analogous to *Loretto*, because it did not require that the utilities allow companies to attach anything to their poles or require that they maintain prior attachments. *Id*. It simply restricted the rates they could charge *if* they chose to allow or maintain such attachments. *Id*. Nothing in *FCC* precludes a *Loretto* takings challenge when, as here, the City requires the Moneys to keep a metal object approximately the same size as the cable box in *Loretto* attached to the front of their home without compensation.

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987) is also unhelpful. That case did not even involve a *Loretto* claim. The property owner challenged a regulation that prevented the removal of more than fifty percent of the subterranean coal in certain areas to prevent subsidence. The property owner argued

this safety restriction was a taking because it greatly devalued their coal leases. The Court disagreed. As the Court explained, restrictions on public nuisances have never been deemed to be takings, because the right to own property does not include the right to use that property in ways that create a nuisance or injure one's neighbors. *Id.* at 488-91. As such, the restriction on mining was not a taking, because it was necessary to protect public safety. *Id.* Here, the City does not suggest that removal of the "Z" will cause a nuisance or endanger the health and safety of the Moneys' neighbors. Rather, as in *Loretto*, the City insists that the Moneys keep an object attached to their home solely to provide a *benefit* to others—in this case, the alleged benefit of looking at an alleged Klansman's initial on someone else's home. *Keystone* simply does not apply to those facts. For the same reason, the City's scaremongering about handrails, sprinklers, and other reasonable safety requirements also falls flat. ECF 40, p.11. The City's attempt to distinguish *Loretto* fails.

The City also string-cites a hodgepodge of non-binding district, state court, and out of circuit cases—many of which are unpublished, and several of which are wholly irrelevant to the issues in this case. Indeed, several of the City's cited authorities do not discuss *Loretto* at all. Because none of those cases are binding on this court or overcome a plain reading of *Loretto*, the Moneys do not individually distinguish them here. Suffice it to say, *none* of the City's cases held that *Loretto* does not apply when, as here, the government mandates that a property owner keep a pre-existing metal object (approximately the same size as the cable box in *Loretto*) attached to the front of their home for a public benefit without compensation. Nor could they. As noted above, *Loretto* itself involved exactly those facts.

*Finally*, the City notes that *Penn Central Transp. Co. v. New York City* , 438 U.S. 104, 129 (1978) involved a historic preservation ordinance and therefore should apply here instead of *Loretto*. ECF 40, p. 14. But this same issue was raised at the Fifth Circuit and explicitly rejected. *Money*, 2025 LX 273785, at *11. This makes

12

sense. *Penn Central* was decided before the law regarding physical occupation takings was clarified in *Loretto*. And, more importantly, *Penn Central* involved a restriction on what could be built, not what had to remain. The plaintiffs in *Penn Central* did not—and indeed, could not—argue a physical occupation taking in that case. Here, by contrast, the restriction requires the Moneys to keep a metal object approximately the same size as the cable box in *Loretto* attached to their home. As the Fifth Circuit already recognized, there is "no meaningful distinction" between this case and *Loretto*. *Money*, 2025 U.S. App. LEXIS 2897, at *11.

## II.   THE CITY IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE MONEYS' TEXAS DUE COURSE OF LAW CLAIMS.

The Ordinance also violates the Texas Constitution. Like the Federal Due Process clause, Texas's Due Course of Law clause requires that restrictions on private property rights be rationally related to a legitimate government interest. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). But Texas courts' interpretation of the "Due Course" clause varies from federal rational-basis scrutiny in two ways that are relevant to this case.

<u>First</u>, as the Fifth Circuit confirmed in this case, Texas courts take a narrower view of what constitutes a legitimate government interest to regulate property. *Money*, 2025 U.S. App. LEXIS 2897, at *16. In Texas, the police power over private property is largely limited to policing harmful or incompatible uses. *Milton v. United States*, 36 F.4th 1154, 1161 (Fed. Cir. 2022) (citing *Lombardo*, 73 S.W.2d 475). As the Texas Supreme Court has explained, "the police power is subordinate to the right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody." *Lombardo*, 73 S.W.2d at 479; *Spann*, 235 S.W. at 515. As such, "the police power may be invoked to abridge the right of the citizen to use his private property when such use will endanger public health, safety, comfort or welfare—*and only* when this situation arises." *Id.* (emphasis added).

13

Applying this harm-based approach to the police power, the Texas Supreme Court has long held that "[r]egulations interfering with private property rights are invalid if founded upon purely aesthetic consideration." *Lombardo*, 73 S.W.2d at 479; *Spann*, 235 S.W. at 517 (collecting cases); *Money*, 2025 U.S. App. LEXIS 2897, at \*12.

<u>*Second*</u>, unlike federal rational basis scrutiny, Texas rational basis scrutiny requires at least some consideration of proportionality as well as rationality. *Patel*, 469 S.W.3d at 90. If the "loss to the property owner affected, in proportion to the good accomplished [by the ordinance]" is unreasonable, then the ordinance must fail. *W. U. Place v. Ellis*, 134 S.W.2d 1038, 1040–41 (Tex. 1940). The Ordinance fails this test.

### A. The challenged portions of the ordinance are not rationally related to a legitimate government interest

To begin, the challenged portions of the ordinance are based on aesthetics, which is not a legitimate government interest. "Regulations of property for purely aesthetic purposes have violated the Texas Constitution for over 100 years and still do." *Money*, 2025 LX 273785, at \*12 (citing *Spann*, 235 S.W. at 513, 518).

The City falsely claims that the Moneys fail to explain what aesthetic means. But the Moneys' articulation of Texas law has been clear. Texas Courts use the term "aesthetics" to distinguish between objective police power restrictions based on common-law harms and restrictions based on appearance or other subjective factors. *Lombardo*, 73 S.W.2d at 479; *Spann*, 235 S.W. at 516. As one case—cited in *Spann*— put it, the police power does not permit a city to compel "the citizen to conform a building which he may desire to erect, to the 'general character' [of] the building which his neighbor may, previously, have erected." *Bostock v. Sams*, 52 A. 665, 669 (1902). "[I]n a free country a man has the unqualified right to erect upon his land non-hazardous buildings in keeping with his own taste and according to his own convenience and means, *without regard* to whether they conform in size or

14

appearance to other structures in the same vicinity. *Money*, 2025 LX 273785, at *13 (quoting *Spann*, 235 S.W. at 518) (emphasis added)).

Applying the above definition, the challenged portions of the ordinance are aesthetic. All ten mandatory criteria for granting a certificate of appropriateness turn exclusively on "visual compatib[ility]" with surrounding structures. Dev. Code § 4.5.2.1 (I)(1)(a)-(j). The non-mandatory criteria are likewise focused on ensuring that structures maintain an appearance that is consistent with the aesthetic of prior structures in the area. 36 C.F.R. §67.7(b). The City itself admits that these criteria are "aesthetic considerations." ECF 40, p. 4.

Practice bears this out. As noted above, it is undisputed that the Commission's decisions on applications for certificates of appropriateness have turned on what would be "prettier" or have more "pizazz." The City cannot reasonably suggest that such aesthetic decision-making can be squared with *Spann*.

Despite the plain text of the challenged provisions, the City insists that the challenged provisions are based on preserving historic structures, not aesthetics. But to make this argument, the City points to several portions of the ordinance which the Moneys have never challenged. For example, the City notes that the stated purpose of the ordinance, and historic zoning generally, is to "preserve and maintain the character of the historic buildings in San Marcos."

But the Moneys do not challenge the City's ability to create a historic district, or to take action to preserve historic structures, generally. The Moneys challenge the certificate of appropriateness requirements.

Despite multiple rounds of briefing both here and in the Fifth Circuit, the City has never even attempted to explain how the certificate of appropriateness requirements—*which are the only provisions challenged here*—are not aesthetic. To the contrary, it is undisputed that the certificate of appropriateness requirements: (1) only apply to visible changes to a property; (2) apply equally to vacant lots and

non-historic structures; and (3) turn on mandatory aesthetic factors which never even mention the word "history." Indeed, the City's pleadings in this case and elsewhere have repeatedly acknowledged that these are "aesthetic considerations," ECF 40, p. 4, that they are "really based on the aesthetic," ECF 37-5, and are designed to regulate "what people see." ECF 13, p. 12.

This otherwise unconstitutional design review process is not immunized from constitutional challenge simply because it is located next to historic restrictions in the City's zoning code.

Two cases are instructive on this point. In *St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013), the state claimed that a permitting requirement for casket sellers was rationally related to preventing the sale of inferior caskets that would allow human remains to seep into the soil. On its face, preventing soil contamination is a legitimate government interest. But when the court looked at the operative provisions of the law, it noted that none of the requirements turned on casket construction. *Id.* To the contrary, the same statutory scheme allowed individuals to be buried with no casket at all. *Id.* Looking at these provisions, the court concluded that the state could not claim that its statute was rationally related to a legitimate government interest, and held the statute unconstitutional. *Id.* The stated purpose of the statute was irrelevant.

Similarly, in *Humble Oil & Ref. Co. v. Georgetown*, 428 S.W.2d 405, 413 (Tex. Civ. App. 1968), the plaintiffs challenged a restriction on the storage of gasoline. The City claimed that the restrictions were rationally related to fire prevention. *Id.* On its face, fire prevention is a legitimate government interest. But, again, the court did not stop at the stated purpose of the ordinance. *Id.* Instead, it looked at the operative provisions. *Id.* As it turned out, the operative provisions had no meaningful connection with fire prevention. *Id.* Thus, even though gasoline is flammable, and fire prevention is a legitimate interest, the court found that the ordinance was

16

unconstitutional. *Id*. The operative provisions—not the stated purpose—was what mattered.

Here, the City claims that the stated purpose of the ordinance is to preserve historic structures. But, as in *St. Joseph* and *Humble Oil*, the operative provisions of the ordinance are not meaningfully connected to that end. Thus, as in *St. Joseph* and *Humble Oil,* the ordinance is unconstitutional.

The City responds that the Texas Supreme Court already upheld this sort of ordinance in *Powell v. City of Houston*, 628 S.W.3d 838 (Tex. 2021). But the City made the same argument to the Fifth Circuit, and the court was not persuaded. That's because the Texas Supreme Court in *Powell* made clear that it was *not* ruling on the constitutionality of the ordinance in that case. *Powell*, 628 S.W.3d at 842-43. And four Justices wrote separately in *Powell* to note that were the constitutionality of the ordinance before the Court, they would have applied *Spann*. *Powell*, 628 S.W.3d at 867 n.37 (citing *Spann*). In other words, nothing in *Powell* means that historic zoning ordinances have a "get-out-of-*Spann*-free-card." When, as in this case, the operative provisions of the ordinance regulate based on appearance, the ordinance is unconstitutional.

### B. The challenged portions of the Ordinance are unduly burdensome as applied to the Moneys

The Ordinance is also unconstitutional as applied to the Moneys. As explained in the Moneys' summary judgment motion, the Texas Constitution requires not only that an ordinance be rationally related to a legitimate government interest, but also that it not be unduly burdensome as applied. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). This necessarily requires some proportionality between the extent of the restriction on a property right, and the public benefit achieved. *W. U. Place v. Ellis*, 134 S.W.2d 1038, 1040–41 (Tex. 1940).

Here, the sole public benefit articulated by the City is historic preservation. But the City's own findings were that: (1) the home was not historic, (2) the "Z" may not have been original, and (3) removal would have no historic impact. ECF 15-1, pp. 5-8. Indeed, to this day, the Commission has not designated the home historic, acquired an historic easement, or upgraded the preservation priority of the home.

At the same time, the impact to the Moneys' property rights is severe. There is no dispute that the Moneys are not only forced to permanently keep an unwanted object attached to their home, but are also required to spend months and hundreds of dollars seeking preclearance before they change anything else affecting the home's appearance. This is a significant burden as a matter of law. *Loretto*, 458 U.S. at 433; *Spann*, 235 S.W. at 516.

The City raises two arguments in response. <u>*First*</u>, the City claims that the undue burden test does not apply outside of economic liberty claims. But as explained in prior briefing, the undue burden test applied to property rights claims for a century before the Court expanded it to cover economic liberty claims in *Patel*. See, e.g., *Houston & T. C. R. Co. v. Dallas*, 98 Tex. 396, 419 (Tex. 1905). Indeed, many of the cases cited in *Patel* to explain the undue burden test were property rights cases. The City's argument fails as a matter of law.

<u>*Second*</u>, the City claims that, despite its own findings, the historic preservation benefit here is significant. But the *only* facts before the Commission were that this is a non-historic home, that the "Z" could not be confirmed as original, and that removal would have no historic effect. ECF 15-1, pp. 4-8. While the City is correct that the Commission was not bound by those findings, this Court must consider those findings when deciding whether the Commission's action was rational. *Patel*, 469 S.W.3d at 87. An ordinance that allowed the Commission to wholly disregard its own findings without explanation or alternative evidence would, itself, be arbitrary and unconstitutional.

18

As the Fifth Circuit recognized, the City chose not to designate the home as historic, and the "Texas Historical Commission has rejected an application to designate it as such." *Money*, 2025 LX 273785, at *2. The City may not now insist that it is of such historic value as to justify eradicating the Moneys' property rights.

## CONCLUSION

Despite the City's attempt to shift the narrative, the question presented in this case remains both narrow and straightforward. Can the City force the Moneys to keep an unwanted object bolted to their home, without compensation, simply because an unelected Commission wants to look at it?

The answer is no. Under the United States Constitution, the government must pay for such physical occupations regardless of the public interest served. And under the Texas Constitution, the City's desire to maintain a certain "look" is not a sufficient basis to restrict property rights.

The City's motion for summary judgment should therefore be denied, and the Moneys' summary judgment should be granted.

Date: November 10, 2025,                     Respectfully submitted,

*/s/Chance Weldon*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
HEIDI WALUSIMBI
Texas Bar No. 24138997
hwalusimbi@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728
*Counsel for Plaintiffs*
*Kristy Money and Rolf Straubhaar*

19

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed on November 10, 2025, with the Clerk of the Court for the Western District of Texas using the CM/ECF system, which will serve a copy of same on all counsel of record.

/s/ Chance Weldon
CHANCE WELDON