# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| **KRISTY KAY MONEY and ROLF JACOB SRAUBHAAR,** *Plaintiffs* | § | |
| **v.** | § | **CIVIL NO. 1:23-CV-00718-RP** |
| **CITY OF SAN MARCOS and AMANDA HERNANDEZ, in her official capacity as Director of Planning and Development Services,** *Defendants* | § | |

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN UNITED STATES DISTRICT JUDGE**

Now before the Court are Plaintiffs' Amended Motion for Summary Judgment, filed September 25, 2025 (Dkt. 37); Defendants' Motion for Summary Judgment, filed October 27, 2025 (Dkt. 40); and the associated response and reply briefs.[1]

## I. Background

Plaintiffs Kristy Kay Money and Rolf Jacob Sraubhaar bought a house in the Burleson Historic District in San Marcos, Texas with this wrought-iron balcony on the second-story front façade:



[1] By Text Orders entered October 2, 2025 and October 28, 2025, Judge Pitman referred the motions to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court **GRANTS** the parties' Agreed Joint Request for Leave to Exceed Page Limit, filed October 10, 2025 (Dkt. 38).

Six years later, Plaintiffs filed an application with the San Marcos Historic Preservation Commission to remove the entire balcony. Under the San Marcos Development Code ("Ordinance"), property owners must seek a certificate of appropriateness from the Commission before making certain alterations to their property, including alterations to the front façade. The Commission held a hearing during which they denied the application by unanimous vote.

Plaintiffs did not appeal the decision to the San Marcos Zoning Board. Instead, they sued Defendants the City of San Marcos and Amanda Hernandez in her official capacity as the city's Director of Planning and Development Services. Plaintiffs assert facial and as-applied claims for a *per se* taking, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, and for an unconstitutional exercise of the police power under Article I, Section 19 of the Texas Constitution. Complaint, Dkt. 1.

Five days after filing suit, Plaintiffs moved for summary judgment on all their claims; shortly thereafter, Defendants moved to dismiss the Complaint. Judge Pitman referred the motions to this Magistrate Judge, who issued a report and recommendation to grant Defendants' motion to dismiss, dismiss all claims without prejudice for failure to state a claim and because they were not ripe, and dismiss Plaintiffs' motion for summary judgment as moot. Dkt. 19. Judge Pitman adopted the recommendation in full, and Plaintiffs appealed. The Fifth Circuit reversed and remanded "for continued proceedings consistent with this opinion." *Money v. City of San Marcos*, No. 24-50187, 2025 WL 429980, at *7 (5th Cir. Feb. 7, 2025) (unpub'd); Dkt. 27. On the federal takings claims, review was limited to Plaintiffs' as-applied challenge. *Money*, 2025 WL 429980, at *4.

After remand, Judge Pitman set aside the final judgment. Dkt. 36. Both parties now seek summary judgment on both of Plaintiffs' claims.

## II. Legal Standards

Summary judgment is proper when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citation omitted).

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis*, 765 F.3d at 484 (cleaned up).

When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). Summary judgment is appropriate "if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

On cross-motions for summary judgment, courts review each party's motion independently. *Johnson v. Chesapeake La., L.P.*, 87 F.4th 305, 308 (5th Cir. 2023).

## III. Plaintiffs' Motion for Summary Judgment

### A. Evidentiary Objection

Defendants ask the Court to disregard paragraph 10 of the Declaration of Plaintiff Kristi Kay Money, averring that the prior owner of Plaintiffs' home, former San Marcos mayor and theater owner Frank Zimmerman, "was known to have promoted Ku Klux Klan films and activities at his theatre." Dkt. 4-1 ¶ 10. Defendants argue: "Plaintiffs provide no basis for Plaintiff Money's conclusory and self-serving statement, nor do they show how Plaintiff Money gained such personal knowledge." Dkt. 38-1 at 8. The Court has not relied on the declaration, submitted with an earlier summary judgment motion dismissed as moot (Dkt. 23 at 2), and **DENIES** the objection as moot.

### B. Takings Claims under the U.S. Constitution

In reversing the dismissal of this case for failure to state a claim, the Fifth Circuit stated:

> In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the landmark *per se* takings case, a landlord discovered after purchasing an apartment building that the building had a cable and two cable boxes attached to its roof. *Id.* at 424. The building's previous owner had authorized a cable television servicer to install the cable and boxes. *Id.* at 421. A New York law enacted after the installation prohibited landlords from interfering with, or demanding payment for, the installation of cable television facilities on their property. *Id.* at 421-23. The Supreme Court deemed that a *per se* taking. *Id.* at 432.
>
> . . . We see no meaningful distinction between the allegations in the Moneys' complaint and *Loretto*. Both here and there, a government ordinance prohibited a building owner from removing an object that was already attached to the exterior of his building when he purchased it. Likewise, both the Z and the cable equipment were installed at a former owner's discretion, not pursuant to government action or regulation, but subsequently enacted public ordinances prohibited removal.

*Money*, 2025 WL 429980, at *5. As stated, the opinion is limited to Plaintiffs' as-applied takings claim. *Id.* at *4.

The parties sharply dispute how the "no meaningful distinction" statement bears on summary judgment. In a one-page argument in their opening brief, Plaintiffs contend: "In light of the Fifth

Circuit's holdings, summary judgment on the Moneys' takings claims is proper." Dkt. 37 at 17. They assert that, "just as in *Loretto*, the Ordinance mandates a physical occupation of property without just compensation in violation of the Fifth and Fourteenth Amendments and should be enjoined." *Id.* at 16-17.

In response, Defendants characterize the Fifth Circuit's assessment as dicta and emphasize that it pertains only to the allegations in Plaintiffs' Complaint, conclusive on a motion to dismiss but not at summary judgment. Defendants argue that Plaintiffs have not met their burden to prove the Ordinance is unconstitutional as a matter of law and that, on the summary judgment record, "there are factual evidentiary distinctions between this case and the facts of *Loretto* that were not discussed or fully briefed in the Motion to Dismiss context, which render *Loretto* wholly inapplicable." Dkt. 38-1 at 12. Defendants argue that the most significant distinctions include "1) when the state action occurred versus when the property was acquired; 2) when the property owner learned of the intrusion versus when the overall property was acquired; and 3) the [ ] distinction between the existence of an external invasion not just a regulatory impact on modification." *Id.* at 13.

In reply, Plaintiffs contend that Defendants' arguments are barred by the law of the case doctrine and the mandate rule, arguing that the Fifth Circuit "concluded in clear, unequivocal terms that *Loretto* applied." Dkt. 39 at 7. In rendering its decision, Plaintiffs argue,

> the Fifth Circuit already acknowledged that: (1) the ordinance existed when the Moneys purchased their home; and (2) the "Z" was attached by a previous owner, not the government. The Fifth Circuit nevertheless concluded that Loretto applied. That *legal* holding is therefore the law of the case and cannot be challenged here.

*Id.* at 8.

This Magistrate Judge does not construe the quoted language from the Fifth Circuit as dicta. "A statement is not dictum if it is necessary to the result or constitutes an explication of the

governing rules of law." *Burgess v. Whang*, 152 F.4th 579, 588 n.5 (5th Cir. 2025) (quoting *Int'l Truck & Engine Corp.. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)). The panel's conclusion that there is "no meaningful distinction" between Plaintiffs' Complaint and *Loretto* was necessary to its holding that Plaintiffs stated a *per se* takings claim.

Under the law-of-the-case doctrine, "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 385 (5th Cir. 2011) (quoting *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006)).

> A corollary of the law of case doctrine, known as the mandate rule, provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate, and may not disregard the explicit directives of that court. The mandate rule simply embodies the proposition that a district court is not free to deviate from the appellate court's mandate.

*Kapche v. City of San Antonio*, 304 F.3d 493, 496 (5th Cir. 2002) (cleaned up).

The court reversed the order dismissing Plaintiffs' Complaint based on the allegations in their Complaint, not facts adduced at summary judgment. *See United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 892 F. Supp. 890, 908 (W.D. Tex. 1995), *aff'd*, 89 F.3d 233 (5th Cir. 1996) (stating that rulings on a Rule 12(b)(6) motion do not bind the court at a later stage of the litigation, with different burdens of proof and evidentiary standards). Nevertheless, this Magistrate Judge construes the Fifth Circuit's opinion to hold as a matter of law that *Loretto* governs the facts of this case as applied to Plaintiffs. On remand, the Court may not reexamine this issue of law decided on appeal. *McClain*, 649 F.3d at 385.

The Court also agrees with Plaintiffs that each fact Defendants contend meaningfully distinguishes the summary judgment record from the allegations in the Complaint is either incorporated in the *Money* opinion or foreclosed by Supreme Court precedent. This includes the

first distinction raised by Defendants: "when the state action occurred versus when the property was acquired." Dkt. 38-1 at 13. In contrast to the facts of *Loretto*, Plaintiffs do not dispute that the Ordinance was in place long before they bought their house. But they argue persuasively that "it is black-letter law that a property owner is not foreclosed from prevailing on a takings claim simply because the property was purchased with knowledge of a pre-existing regulation." Dkt. 39 at 9. Among other cases, Plaintiffs cite *Palazzolo v. Rhode Island*, 533 U.S. 606, 626 (2001), in which the Supreme Court rejected the argument that subsequent owners cannot claim injury from lost value when "they purchased or took title with notice of the limitation." The Court held:

> The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions. The Takings Clause, however, in certain circumstances allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation. Just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned, other enactments are unreasonable and do not become less so through passage of time or title. Were we to accept the State's rule, the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.

*Id.* at 627 (citation omitted).

The Court finds that Plaintiffs have met their burden to show that the Fifth Circuit held in *Money* as a matter of law that they stated a *per se* takings claim as the Ordinance applies to them, and that Defendants have identified no genuine issue of material fact for trial. Thus, this Magistrate Judge recommends that Judge Pitman grant summary judgment for Plaintiffs on their as-applied takings claim.

Neither party distinguishes between Plaintiffs' facial and as-applied federal takings claims in their summary judgment briefs. An as-applied challenge requires the movant to show that the application of the challenged statute to the facts of her case would violate her constitutional rights, while a "'facial challenge is an attack on a statute itself as opposed to a particular application' and requires the movant establish that 'the statute is unconstitutional in all of its applications.'" *Lucid Grp. USA, Inc. v. Johnston*, No. 1:22-CV-1116-RP, 2025 WL 1009350, at *7 n.3 (W.D. Tex. Mar. 31, 2025) (quoting *United States v. Simien*, 655 F. Supp. 3d 540, 548 (W.D. Tex. 2023)). A facial challenge "considers only the text of the measure itself, not its application to the specific circumstances under which a person acted." *Id.* (citation omitted).

Because Plaintiffs neither argued nor proved in their summary judgment motion that the Ordinance is unconstitutional in all its applications, this Magistrate Judge recommends denying their facial takings claim.

**C. Police Power Claim under the Texas Constitution**

Plaintiffs also argue that the challenged parts of the Ordinance violate the Texas Constitution because they turn on aesthetics, and even if not, the Ordinance is unduly burdensome as applied to them. Defendants contend that Plaintiffs have not overcome the presumption that the Ordinance is valid or shown as a matter of law that it is unduly burdensome or that its enforcement was based solely on aesthetics.

Article 1, Section 19 of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Plaintiffs allege that the following sections of San Marcos's Development Code, read together, violate this provision:

> **§ 2.5.5.1(B): Applicability**. A certificate of appropriateness is required for portions of buildings and sites visible from adjacent public rights-of-way, streets or alleys as defined by Section 2.5.5.1(D) prior to undertaking any of the following activities in a local Historic District or at a local Historic Landmark:
>
> **1.** Construction and reconstruction, including fences and walls;
> **2.** Alteration, additions, restoration and rehabilitation;
> **3.** Relocation;
> **4.** Signage;
> **5.** Construction or reconstruction of a parking lot;
> **6.** Construction or reconstruction of an appurtenance;
> **7.** Demolition; and
> **8.** Establishment or alteration of lighting, furniture and seating plans, and/or awnings and umbrellas within public right-of-ways.
>
> **§ 2.5.5.4 Criteria for Approval**. The following criteria shall be used to determine whether the application for a certificate of appropriateness shall be approved, conditionally approved or denied:
>
> **A.** Consideration of the effect of the activity on historical, architectural or cultural character of the Historic District or Historic Landmark;
> **B.** For Historic Districts, compliance with the Historic District regulations;
> **C.** Whether the property owner would suffer extreme hardship, not including loss of profit, unless the certificate of appropriateness is issued; and
> **D.** The construction and repair standards and guidelines cited in Section 4.5.2.1.
>
> **§ 4.5.2.1 Historic District**
>
> **I. Construction and Repair Standards.**
>
> 1. New construction and existing buildings and structures and appurtenances thereof within local Historic Districts that are moved, reconstructed, materially altered or repaired shall be visually compatible with other buildings to which they are visually related generally in terms of the following factors; provided, however, these guidelines shall apply only to those exterior portions of buildings and sites visible from adjacent public streets:

Dkt. 37 at 62, 64, 87, 90. Section 4.5.2.1(I)(1) lists visual compatibility standards with adjacent and visually related buildings for height, proportion of a building's front façade, proportion of openings within the facility, rhythm of solids to voids in front façades, rhythm of spacing of

buildings on streets, rhythm of entrance and/or porch projection, relationship of materials, texture and color, and roof shapes. *Id.* at 90.

**1. Facial Claim**

Plaintiffs argue that the Ordinance is based purely on aesthetics, impermissible under Texas law. *Money*, 2025 WL 429980, at *6 ("Restricting private property rights for purely aesthetic purposes is still impermissible."); *Spann v. City of Dallas*, 235 S.W. 513, 517 (Tex. 1921) (stating that "municipal regulations interfering with private property rights and founded upon purely aesthetic considerations, are universally held invalid"). Plaintiffs contend that "the challenged portions of the Ordinance have nothing to do with preserving historic structures." Dkt. 37 at 21. They argue that a zoning restriction is "aesthetic" under Texas law when it turns on issues of visual uniformity or visual character rather than restricting traditional externalities that would fall within the police power. Dkt. 39 at 12-13 (citing *Spann*, 235 S.W. at 516).

This Magistrate Judge finds that Plaintiffs have not met their burden to show that the text of the Ordinance is based on purely aesthetic considerations and unconstitutional in all applications as a matter of law. As Defendants argue, the language of the Ordinance "expressly demonstrates to the contrary." Dkt. 38-1 at 23. Section 4.5.2.1(A) provides:

> **A. Purpose**. The purpose of HD, Historic District is to promote the educational, cultural and economic welfare of the public and of the City by preserving, conserving, and protecting Historic Structures, Streets and neighborhoods that serve as visible reminders of the history and cultural heritage of the City, the State and the United States. Furthermore, it is the purpose of HD, Historic District to strengthen the economy of the City by stabilizing and improving property values in historic areas and to encourage new Buildings and developments that shall be compatible with the existing historic Buildings and square.

Dkt. 37 at 87.

Plaintiffs argue that the stated purpose for the Ordinance is not dispositive, but the examples they submit of decisions applying the Ordinance based on purely "aesthetic decision-making" at most raise disputes of material fact to be resolved at trial. Dkt. 37 at 19. This Magistrate Judge recommends that Judge Pitman deny summary judgment for Plaintiffs on their facial challenge to the Ordinance under the Texas Constitution.

**2. As-Applied Claim**

Finally, Plaintiffs argue that the application of the Ordinance fails the proportionality requirement for as-applied claims under the Texas rational basis test and is unduly burdensome as to them:

> Here the impairment on property rights is severe. The Moneys may not make *any* change to the visible portions of their home without prior approval from the Commission. As a result, the Moneys are forced to keep unwanted objects on their property solely at leave of the Commission. At the same time, any impact to a legitimate government interest is minimal to non-existent.

Dkt. 37 at 22. They offer no evidence showing the Ordinance is unduly burdensome.

There is record evidence that the Commission rested its decision denying Plaintiffs' application to remove the balcony on historical considerations, not aesthetics. During the hearing, a staff member gave a presentation in which she said: "This balcony could be historic material. You can see in this photograph that there is a Z that can be seen on the balcony, which one could assume that refers to the Zimmerman family who originally built the home in the 1930s." Video recording of Historic Preservation Commission hearing, Dkt. 37 at 100, Exh. 6 at 54:09-22. The commissioners then discussed the balcony's historic nature:

> **Commissioner 1:** "Just looking at the images and so forth, it strikes me as being original to the house and really seems like a character-defining element of the house. It's like one of the – it seems to really define the historic quality of the façade, to me." *Id.* at 58:05-19.

> **Commissioner 2:** "I agree. I think it is very important historically because it's got the Z on it and it was the Zimmerman house. And the reason that we have houses in the historic district is we're trying to make a connection in some ways to the past. And just to go in and destroy the one thing that really points it out as being the Zimmerman house seems like it would be a shame to take that off and I don't know why you'd want to take that off, because it certainly helps define the house. It helps define the history." *Id.* at 58:25-58.

A third commissioner then asked Money directly why she wanted to remove the balcony:

> **Money:** "Um, well, you know, every person is different. We just – we don't like it. We don't want it on. I think our application, um, speaks for itself." *Id.* at 59:24-36.
>
> **Commissioner 2:** "But if everybody did that in historic districts, there would be no – if everybody did what they wanted and what they liked, then the historic district would have no integrity. It wouldn't even be historic anymore." *Id.* at 59:39-49.
>
> **Money:** "I understand where you're coming from. Yeah. It's integrity, that ideal that propels us to want things to be similar to our family's values. So I can see that we share the same value of integrity, it's just a matter of application." *Id.* at 59:52-1:00:12.
>
> **Commissioner 1:** "I mean, that's the whole point of a historic district, is to retain character-defining features, and that is a character-defining feature. Certainly it appears to date from the '30s just from what I can tell as an architectural historian. And it doesn't seem to cause any problems. It's relatively minor in the sense of, you know, functionally, I don't think it's, you know, hurting anything. I can't see how it could hurt anything. So I don't really see a justification for removing it, given the fact that the house is in a historic district and that's a character-defining feature of the house." *Id.* at 1:00:15-54.
>
> **Commissioner 2:** "You know, so many of us who restore these houses struggle to keep the original character-defining aspects of the house and the materials that are originally used and all, and, you know, that's the whole point of being in a historic district, you know, to kind of like respect the past." *Id.* at 1:00:58-01:18.

Finding that the summary judgment record raises genuine issues of material fact as to whether the Ordinance is unduly burdensome as applied to Plaintiffs or its enforcement is based solely on aesthetics, this Magistrate Judge recommends that Judge Pitman deny Plaintiffs' motion for summary judgment on their as-applied challenge to the Ordinance under the Texas Constitution.

## IV. Defendants' Motion for Summary Judgment

While the Court reviews each party's motion for summary judgment independently under *Johnson*, 87 F.4th at 308, the parties' briefing across the two motions is highly similar, raising the same material arguments. For the above reasons, this Magistrate Judge recommends that Judge Pitman deny Defendants' motion for summary judgment. Plaintiffs have shown that judgment as a matter of law on their as-applied takings claim is proper under *Money*, 2025 WL 429980, and the Court finds that fact issues preclude summary judgment on all remaining claims.

## V. Recommendation

The these reasons, this Magistrate Judge **RECOMMENDS** that the Honorable Robert Pitman **GRANT** Plaintiffs' Amended Motion for Summary Judgment (Dkt. 37) as to their as-applied takings claim, **DENY** Plaintiffs' motion as to all other claims, and **DENY** Defendants' Motion for Summary Judgment (Dkt. 40).

This Court **ORDERS** the Clerk to remove this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C.

§ 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 5, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE