**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| KRISTY KAY MONEY and ROLF JACOB STRAUBHAAR<br>*Plaintiffs*, | § | |
| v. | § | Civil Action No. 1:23-cv-00718-RP |
| CITY OF SAN MARCOS, AND DIRECTOR OF PLANNING AND DEVELOPMENT SERVICES AMANDA HERNANDEZ in her official capacity,<br>*Defendants*. | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS


INDEX OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The Moneys are Entitled to Summary Judgment on Their Facial Challenge ........ 2

- A. The Texas Constitution prohibits property restrictions based on visual uniformity ........ 2
- B. It is undisputed that the challenged provisions turn on visual uniformity ........ 2
- C. The stated purpose of an ordinance does not immunize its operative provisions from review ........ 3
- D. The existence of some constitutional provisions does not shield unconstitutional provisions from review ........ 5
- E. The fact that application of the ordinance could sometimes have positive outcomes does not shield unconstitutional provisions from review ........ 6
- F. *Powell* does not help the City ........ 7

II. The Moneys are Entitled to Summary Judgment on Their As-Applied Challenge ........ 8

- A. The uncontested facts show that the ordinance is unduly burdensome as applied to the Moneys ........ 8
- B. Contrary to the City's suggestion, the Moneys are burdened by being required to keep a Klansman's initial bolted to the front of their home ........ 9
- C. The opinion of two Commissioners is not enough to overcome uncontested staff findings of no historic impact ........ 10

CERTIFICATE OF SERVICE ........ 11

## INDEX OF AUTHORITIES

***Cases:*** ***Page(s):***

*Eubank v. Richmond*,
226 U.S. 137 (1912) .................... 6

*Horne v. Dep't of Agric.*,
576 U.S. 351 (2015) .................... 4

*Marfil v. City of New Braunfels, Tex.*,
No. 6:20-cv-00248-ADA-JCM, 2025 U.S. Dist. LEXIS6256
(W.D. Tex. Jan. 10, 2025) .................... 9

*Marfil v. City of New Braunfels*,
178 F.4th 941 (5th Cir. 2026) .................... 9

*Money v. City of San Marcos*,
No. 24-50187, 2025 U.S. App. LEXIS 2897 (5th Cir. Feb. 7, 2025) .................... 2

*Palazzolo v. Rhode Island*,
533 U.S. 606 (2001) .................... 9, 10

*Patel v. Tex. Dep't of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) .................... 8, 9

*Powell v. City of Houston*,
628 S.W.3d 838 (Tex. 2021) .................... 7

*Spann v. Dallas*,
235 S.W. 513 (Tex. 1921) .................... 2, 3, 4, 6, 7

*W. Univ. Place v. Ellis*,
134 S.W.2d 1038 (Tex. 1940) .................... 8

***Regulations:***

Dev. Code § 2.5.5.1(B) .................... 2, 5
Dev. Code § 4.5.2.1 (I) (1) (a)-(j) .................... 3, 7

Plaintiffs (the Moneys) file this reply in support of their objections to the Magistrate's report and recommendation.

## INTRODUCTION

The Texas Constitution prohibits restrictions on property that are based on appearance rather than impacts to interests within the police power. It also requires the burdens caused by those restrictions to be somewhat proportional to the public interest served.

The Moneys challenge here is narrow. They argue that the challenged provisions of the City's historic preservation ordinance violate the Texas Constitution on their face, because they explicitly regulate changes to property based on "visual compatibility" rather than any other interests within the police power.

In the alternative, they argue that those provisions are unconstitutionally disproportional as applied here, because it is undisputed that they require the Moneys to keep a Klansman's initial bolted to the front of their home, despite the City's findings that removal would have no historic impact.

The City objects. But it does not dispute the text of the challenged provisions or the validity of the City's official findings. Instead, it insists that the challenged provisions and the City's findings are irrelevant. Under the City's view, as long as the Ordinance or a government official mentions history as a goal at some point in the process, the restriction on property is Constitutional.

But that is not how the Constitution works. The Constitution is concerned with means as well as ends. When the legislature delegated cities limited authority to protect historic structures, it did not give them *carte blanche* to violate the Constitution by creating the very sort of aesthetic review the Constitution explicitly prohibits, so long as they mention "history" at some point.

Neither broad purpose statements in an ordinance, nor random commissioner statements at a hearing change the facts here. The City demanded that the Moneys

keep a non historic object, attached to a non historic home, when its own findings were that removal would have no historic impact. And it did so under provisions of an ordinance that explicitly turn on visual compatibility, without regard to any other factors within the scope of the police power.

That arbitrary action violates the Texas Constitution. Summary judgment for the Moneys is proper.

## ARGUMENT

### I. The Moneys are Entitled to Summary Judgment on Their Facial Challenge.

To begin, the Moneys are entitled to summary judgment on their facial challenge to the challenged provisions of the Certificate of Appropriateness process.

#### A. The Texas Constitution prohibits property restrictions based on visual uniformity.

We start with what is not in dispute. The Texas Constitution prohibits aesthetic zoning restrictions. *Money v. City of San Marcos*, No. 24-50187, 2025 U.S. App. LEXIS 2897, at *12-13 (5th Cir. Feb. 7, 2025). (citing *Spann v. Dallas*, 235 S.W. 513, 517 (Tex. 1921)). A restriction is aesthetic when it allows land-use decisions to be based on appearance or visual uniformity regardless of impacts to other interests within the police power. *Spann*, 235 S.W. at 516. In other words, if a provision allows visual uniformity alone to provide a basis to deny a change to property, then the provision is unconstitutional. The City does not dispute this plain reading of the law. *Id*.

#### B. It is undisputed that the challenged provisions turn on visual uniformity.

There is likewise no dispute that the challenged provisions, on their face, turn solely on visual uniformity. While the Certificate of Appropriateness process exists within the Historic Zoning Ordinance, it applies only to visible changes, and applies with equal force to new homes and vacant lots. Dev. Code § 2.5.5.1(B); ECF 37-3,

(Historic Resources Survey Report). Indeed, the City does not dispute that under the ordinance, removing a back porch built by Sam Houston would not trigger review, but removing vinyl siding from the front of a home built in the 1990s would.

Once review is triggered, the City must consider ten mandatory criteria. Dev. Code § 4.5.2.1 (I) (1) (a)-(j). Each of those criteria explicitly turn on whether the change is "visually compatible" with surrounding structures. *Id*. None of those criteria mention history. *Id*. In short, the challenged portions of the ordinance require the exact sort of aesthetic decision-making prohibited by *Spann*.

Practice bears this out. The City does not—and cannot—dispute that the result of writing the ordinance in this way has been decision-making from the Commission based on whether proposed changes would be "prettier" (ECF 37-8, 30:55), have "more pizzaz," (ECF 37-10, 39:00), or just look better. ECF 37-9, 18:05. As the City has candidly admitted in its pleadings and elsewhere, the Certificate process is "really about the aesthetic" (ECF 37-5, "26:30") adding "visible value to the community," and controlling "what people see as they travel the City of San Marcos Streets." ECF 13, p.12. Under any plausible reading of *Spann*, that is impermissible aesthetic zoning.

Tellingly, the City does not defend the challenged provisions of the Ordinance. Indeed, throughout multiple rounds of briefing both here and in the Fifth Circuit, it has rarely—if ever—mentioned them. Instead, it raises four arguments, all of which fail.

### C. The stated purpose of an ordinance does not immunize its operative provisions from review.

To begin, the City accuses the Moneys of "cherry-picking" by focusing on the operative provisions of the ordinance rather than the boilerplate purpose statement of the ordinance as a whole. ECF 46, p. 2. The City notes that the stated purpose of the ordinance is to, "promote the educational, cultural and economic welfare of the public and of the City by preserving, conserving, and protecting Historic Structures,

Streets and neighborhoods that serve as visible reminders of the history and cultural heritage of the City…[and] to strengthen the economy of the City by stabilizing and improving property values…" Since those are legitimate government interests, the City apparently believes the analysis is at an end.

But the stated purpose of an ordinance does not shield its operative provisions from review. The Constitution "is concerned with means as well as ends." *Horne v. Dep't of Agric.*, 576 U.S. 351, 362 (2015). Here, the means the City chose to achieve its alleged public purpose was an unconstitutional design review process that turns explicitly on visual compatibility. The City's inclusion of public purpose boilerplate at the top of the ordinance does not render that otherwise unconstitutional process permissible.

Were it otherwise, *Spann* itself would have come out the other way. In that case, the city likewise pointed to charter provisions discussing legitimate purposes like protecting "health, life and property," "abat[ing] nuisances," "preserv[ing] and enforce[ing] 'the good government, order and security' of the city." *Spann* 235 S.W. at 514. But the Court did not hold those public purpose provisions to be dispositive. *Id.* at 516. Instead, it looked at whether the means chosen to achieve those purposes—i.e., the challenged provisions—targeted those purposes in a constitutionally permissible way. *Id.* The Court concluded that they did not. *Id.* The same approach applies here.

In response, the City points to several cases holding that, when determining the meaning of a text, the court should look to the drafters intent and interpret the ordinance as a whole. ECF 46, p. 3-4. That is certainly true as a matter of statutory interpretation.

But here, there is no dispute about what the challenged provisions mean. The only question is whether those provisions are constitutional. Nothing in the City's cited cases suggests that a court cannot sever unconstitutional provisions from a

regulatory scheme, simply because the scheme as a whole includes a valid boilerplate purpose statement.

**D. The existence of some constitutional provisions does not shield unconstitutional provisions from review.**

Next the City argues that the challenged provisions are not unconstitutional because the ordinance also includes provisions that would allegedly allow the Commission to consider history. For example, the ordinance allows the Commission to incorporate national standards, such as the suggestion that "[c]hanges that create a false sense of historical development, such as adding conjectural features or architectural elements from other buildings, shall not be undertaken." ECF 46, p. 5.

But this has two problems. *First*, the inclusion of some constitutionally permissible *discretionary* criteria does not immunize a host of unconstitutional *mandatory* criteria from constitutional review.

To be sure, had the City written an ordinance that restricted changes to historically designated homes based on historic impact (adequately defined), this would be a more difficult lawsuit. But that is not the ordinance the City wrote.

Instead, the City created a design review process that applies whether a home is historic or not, and turns on mandatory visual criteria that do not mention history. That process is not saved simply because the City *allows*—but does not require—the Commission to also consider "history" in some vague undefined sense.

*Second*, its not clear that the additional provisions the City mentions even turn on history. To be sure, they mention things like avoiding "a false sense of historical development." But the City has previously acknowledged that even these requirements are "aesthetic considerations," ECF 40, p. 4. They are based in preserving a certain preferred historic look. And they apply with equal force whether a property is historic or not. Dev. Code § 2.5.5.1(B). When the Texas Legislature granted cities limited authority to protect historic structures, it did not grant them

carte blanche to regulate the bare appearance of any property that happens to be near something old.

### E. The fact that application of the ordinance could sometimes have positive outcomes does not shield unconstitutional provisions from review.

Next, the City suggests that the ordinance is not facially unconstitutional because in at least some scenarios, it *could* be applied to preserve historic structures.

But this misunderstands how facial challenges work. The question in a facial challenge is not whether, by happenstance, the application of the ordinance could ever achieve some legitimate outcome. The question is whether anything in the ordinance itself requires such an outcome. In other words, a facial challenge turns on whether the challenged portion of the ordinance, on its face, turns on constitutional criteria.

Again, *Spann* is helpful. In *Spann*, 235 S.W. 513, the ordinance was struck down for several reasons, two of which are relevant to this argument. First, the ordinance allowed permits to be denied by a three-fourths vote of surrounding property owners. *Id*. at 516. Second, the ordinance allowed permits to be denied if the inspector thought it was in the public interest. *Id*. at 517. In both scenarios, it was undisputed that the property owners or the inspector *could* deny a permit for legitimate reasons, like nuisance prevention. Nevertheless, the ordinance was declared unconstitutional because nothing in the ordinance *required* decisions to be made on legitimate criteria. *Id*. at 516, 517. The neighbors and the inspectors were thus free to deny a permit based solely on aesthetic considerations. *Id*. See also *Eubank v. Richmond*, 226 U.S. 137, 144 (1912) (zoning ordinance unconstitutional when the permitting process did not preclude decisions made upon improper factors like "taste" or "judgment").

Here, the Ordinance is worse. It not only fails to require that decisions turn on legitimate criteria, it explicitly requires the Commission to base decisions on aesthetics in every case. See, e.g., Dev. Code § 4.5.2.1 (I) (1) (a)-(j). The fact that the Ordinance *could* be applied on occasion to protect something historic is beside the point.

Again, it should be telling that despite nearly a dozen briefs at this point, the City has never even attempted to defend the challenged criteria. That's because it cannot explain how restricting visible changes to non-historic properties based on visual compatibility is not aesthetic zoning.

**F. *Powell* does not help the City.**

Finally, the City claims that *Powell v. City of Houston*, 628 S.W.3d 838 (Tex. 2021) already concluded that historic design review standards are constitutional.

But the City pointed to the same case at the Fifth Circuit and that court was not convinced. That makes sense. *Powell* said nothing about whether particular historic zoning demands were constitutional. To the contrary, the Texas Supreme Court in *Powell* made clear that it was *not* ruling on the constitutionality of the ordinance in that case. *Powell*, 628 S.W.3d at 842-43. And four Justices wrote separately in *Powell* to note that were the constitutionality of the ordinance before the Court, they would have applied *Spann*. *Powell*, 628 S.W.3d at 867 n.37 (citing *Spann*). A case refusing to reach an issue is not precedent deciding that issue.

More importantly, the Moneys do not challenge historic design review in general. They challenge the constitutionality of *these* provisions in *this* ordinance. The fact that the City has repeatedly refused to defend the actual challenged provisions of the actual ordinance it passed is telling.

## II. The Moneys are Entitled to Summary Judgment on Their As-Applied Challenge.

Even if the ordinance is constitutional on its face, it is unconstitutional as applied here.

### A. The uncontested facts show that the ordinance is unduly burdensome as applied to the Moneys.

Again, we begin with what is not in dispute. It is undisputed that the Texas rational basis test requires more than a mere rational relationship to a legitimate government interest. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). To satisfy review, an ordinance also cannot be unduly burdensome or oppressive as applied. *Id*.

To determine if a law is unduly burdensome, courts look to the record to see if the restriction is justified—*i.e.*, proportional—to the real-world impact to the government interest at stake. *Id*. If "the seriousness of the restriction upon the private right" is not "in balance with the expediency of the public interest," then the law is unreasonable. *W. Univ. Place v. Ellis*, 134 S.W.2d 1038, 1041 (Tex. 1940).

Here, the relevant facts are undisputed. The City applied the ordinance to require the Moneys to keep another man's initial bolted to their home, despite the fact that the City's official findings were that removing the "Z" would "not affect" the "historical, architectural, or cultural character of the Historic District." ECF 15-1, p. 5.

Assuming arguendo that the City's decision was based on a vague sense of history, rather than pure aesthetics, the City's own findings do not present a sufficient government interest to justify such a significant impact on the Moneys' property rights. The City raises two arguments in response, both of which fail.

### B. Contrary to the City's suggestion, the Moneys are burdened by being required to keep a Klansman's initial bolted to the front of their home.

To begin, the City claims that the Moneys did not present evidence of burden. But this is false. It is undisputed that under the ordinance the Moneys must spend weeks, pay hundreds of dollars, notify their neighbors, attend public hearings, and receive government permission before making any aesthetic change to the visible portions of their home. It is likewise undisputed that in this case, the result of those hearings was a final order requiring the Moneys to keep a purported Klansman's initial bolted to the front of their home. As explained in the Moneys' objections, this direct restriction on the right to exclude and the right to determine the appearance of their home is a significant burden on their property rights as a matter of law. ECF 45, p. 10-11.

The City suggests that the Moneys are flatly barred from alleging any burden because the ordinance was already in effect when the Moneys purchased their property. ECF 46, p. 10. But the eyebrow threaders in *Patel* were certainly aware of the state's pre-existing cosmetology statute when they started their practice. It did not preclude them from arguing that the statute created an undue burden. As the Supreme Court has held in other contexts, property owners may always challenge the rationality of a zoning ordinance, regardless of when it was adopted. *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001).

The City points to a single line from the unpublished district court opinion in *Marfil v. City of New Braunfels, Tex.*, No. 6:20-cv-00248-ADA-JCM, 2025 U.S. Dist. LEXIS6256, at *2 (W.D. Tex. Jan. 10, 2025) . But the Fifth Circuit upheld that judgment because it found that there was no right to engage in short-term rentals recognized under the Texas Constitution. *Marfil v. City of New Braunfels*, 178 F.4th 941, 945 (5th Cir. 2026). It did not hold, as a matter of Texas law, that property owners are foreclosed from challenging the rationality of any ordinance that happens

to be on the books before they purchased their property. "Future generations, too, have a right to challenge unreasonable limitations on the use and value of land." *Palazzolo*, 533 U.S. at 627.

**C. The opinion of two Commissioners is not enough to overcome uncontested staff findings of no historic impact.**

Finally, the City claims that the Moneys' as-applied claim fails because statements from two Commissioners at the Moneys' hearing show that the decision here was not solely based on aesthetics. In particular two Commissioners noted that they thought the "Z" was probably historic and a character defining feature of the home. ECF 43, p. 11-12.

But this misunderstands the Moneys' claim. Even if the action here was based on history—not aesthetics—it would still be unduly burdensome given the evidence of the government interest at stake. As noted above, it is undisputed that the home is not historically designated, and the City's staff found that removing the "Z" would "not affect" the "historical, architectural, or cultural character of the Historic District." ECF 15-1, p. 5. There was no other evidence before the Commission. That is not a sufficient government interest to justify the restriction on the Moneys' property rights. Summary judgment is proper.

Date: September 2, 2026

Respectfully submitted,

*/s/Chance Weldon*

ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
HEIDI WALUSIMBI
Texas Bar No. 24138997
hwalusimbi@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701

Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that the foregoing document was electronically filed on September 2, 2026, with the Clerk of the Court for the Western District of Texas using the CM/ECF system, which will serve a copy of same on all counsel of record.

*/s/Chance Weldon*
CHANCE WELDON